IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BILLY RAY WALLACE | § | |
| v. | § | CIVIL ACTION NO. 6:15cv702 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Petitioner Billy Ray Wallace, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his continued confinement. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Wallace states that he is serving a life sentence for the offense of capital murder. He contends that the Texas Board of Pardons and Paroles violated the *Ex Post Facto* Clause by denying him release on mandatory supervision and parole based on suitability factors enacted well after his offense of conviction.

Wallace further asserts that mandatory supervision was not discretionary under the law in effect when his offense was committed, in 1979, but TDCJ and the Board of Pardons and Paroles do not apply the law in effect at the time of Wallace's offense to him. According to Wallace, this law provided that when a prisoner achieved a certain number of years served, meaning when his calender time served plus good time earned equals 60 years, the Board had a duty to release him. However, Wallace complains that later amendments have been improperly applied so as to deny his release.

1

On October 10, 2013, Wallace states that he received a favorable parole vote, but it was rescinded without due process on January 24, 2014. The reason given for the rescission was "additional information, BPP Dir. 145.301 applies." Instead, Wallace was given a three-year set off which he claims was founded on falsehoods and misrepresentations spread by a distant family member and a former prosecutor. These people were not in the legal circle of Board policy that had any right to voice any protest. Wallace complains that he did not receive any pre-deprivation process prior to the retraction; he argues that while Texas prisoners may not have any due process rights in making parole, if the board grants parole and rescinds it based on nothing more than "wrong reasons," his liberty and due process rights under the Fourteenth Amendment have been invoked. He cites a Ninth Circuit decision called *McQuillon v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) to state that the decision to grant parole created a liberty interest.

## II. The Respondent's Answer and Wallace's Reply

The Respondent filed an answer arguing that Wallace's claim about having his grant of parole rescinded is unexhausted and procedurally barred because he did not present this claim in state court. The Respondent further contends that Wallace is not eligible for mandatory supervision because he is serving a life sentence, meaning that his calendar time plus his good time can never equal the maximum term of his sentence, and that Wallace has no liberty interest in release on parole.

In his reply to the answer, Wallace argues that according to the Fifth Circuit, the Texas mandatory supervision law prior to September 1, 1996, created a constitutional expectancy of early release. He cites an opinion called *Govan v. Johnson*, civil action no. 1:97cv247 (N.D.Tex., July 1998), in which the Northern District of Texas held that an inmate sentenced to life imprisonment under the law in effect at the time of Wallace's offense would be eligible for release on mandatory supervision after the service of 20 calendar years. Wallace states that this is in accordance with Texas law, because parole and releases to mandatory supervision under the law at the time of his

2

offense used and decided eligibility for release on mandatory supervision using the 60 year method of calculation.

Next, Wallace points to a study from 1997 by the House Research Organization of the Texas House of Representatives discussing proposed restrictions to the mandatory supervision laws. The study noted that questions have been raised about the constitutionality of applying new restrictions to prisoners sentenced under old laws and stated that "for offenses committed before August 31, 1996, the parole board has no discretion; persons eligible for automatic release must be released to mandatory supervision when their calendar time served plus good time equals their sentence."

### III. The Magistrate Judge's Report

After review of the pleadings, the Magistrate Judge issued a Report recommending that Wallace's habeas corpus petition be denied. The Magistrate Judge observed that the law in effect at the time of Wallace's conviction provided that prisoners not sentenced to death were eligible for release on mandatory supervision when the prisoner's actual calendar time plus good conduct time equals "the maximum term to which the inmate was sentenced." The Texas Court of Criminal Appeals has held that under this law, inmates sentenced to life imprisonment are ineligible for mandatory supervision because it is mathematically impossible to determine a release date; the calendar time plus good time can never add up to life. *Ex Parte Franks*, 71 S.W.3d 327, 328 (Tex.Crim.App. 2001). The Court of Criminal Appeals observed that in order to make it possible to calculate a release date, it would arbitrarily have to substitute some number of years for a life sentence in order to make it possible to calculate a mandatory supervision release date, which is the function of the legislature, not the judiciary. Because Wallace has a life sentence, he is therefore ineligible for release on mandatory supervision.

In *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002), the Fifth Circuit applied *Franks* in holding that the petitioner, who had received a life sentence in 1978, was not eligible for mandatory supervision because it was mathematically impossible to determine a release date. Similarly, in *Ellason v. Owens*, 526 F.App'x 342, 2013 U.S. App. LEXIS 7391 (5th Cir., April 12,

3

2013), the Fifth Circuit rejected the petitioner's contention that he should be eligible for mandatory supervision because he retroactively and improperly became ineligible for that status because of the decision in *Franks*.

The Magistrate Judge concluded that because Wallace received a life sentence under the same statute at issue in *Franks*, *Arnold*, and *Ellason*, he likewise was ineligible for release on mandatory supervision because it is mathematically impossible to compute a release date.

With regard to Wallace's claims concerning parole, the Magistrate Judge stated that according to the state records, Wallace received a notice on October 10, 2013, stating that the Board of Pardons and Paroles had decided to grant him parole during the month and year when he became eligible. The decision could be changed by the Board if there was a change in his status or if additional information was received. After additional information was received, the favorable vote was withdrawn.

The Magistrate Judge stated that there is no right or liberty interest in parole release in the State of Texas, citing *Creel v. Keene*, 928 F.2d 707, 708-09 (5th Cir. 1991). Once released on parole, prisoners have a limited liberty interest in remaining free on that status, giving rise to a certain level of due process protections enjoyed by persons facing parole revocation, but Wallace was never released on parole. The Magistrate Judge stated that the mere fact of a favorable approval vote does not itself convey any expectancy of release and thus does not give rise to a liberty interest, citing *Dement v. Director, TDCJ-CID*, civil action no. 9:07cv72, 2007 U.S. Dist. LEXIS 57314 (E.D.Tex., August 6, 2007) (no protected liberty interest based on initial favorable vote by the parole panel). The Magistrate Judge distinguished *McQuillon* because that case involved California law and the California parole scheme gives rise to a cognizable liberty interest in release on parole, which Texas law does not.

The Magistrate Judge further determined that although Wallace complained that the Parole Board relied on false information in withdrawing the grant of parole, the Fifth Circuit has stated that allegations that the Parole Board considers unreliable or even false information in making parole

4

determinations do not, without more, set out a federal constitutional violation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). The Magistrate Judge therefore recommended that Wallace's petition be dismissed and that he be denied a certificate of appealability *sua sponte*.

## IV. Wallace's Objections to the Report

In his objections, Wallace maintains first that the law in effect at the time of his conviction provided that an inmate serving a sentence for an offense listed in Section 3f(a)(1) of Tex. Code Crim. Pro. art. 42.12, or if the judgment contains an affirmative finding under Section 3f(A)(2) is not eligible for release on parole until his actual calendar time served, without consideration of good time, equals one-third of the maximum sentence or 20 years, whichever is less. The law further provided that a prisoner not on parole, except a prisoner sentenced to death, shall be released to mandatory supervision when the calendar time served plus any accrued good conduct time is equal to the maximum term to which he was sentenced.

According to Wallace, because it is mathematically impossible to estimate the maximum term on a life sentence, this term was decided by the legislature when it fixed the maximum term of a life sentence as being 20 calendar years. In other words, a life sentence was deemed equivalent to 60 years, making the inmate eligible for parole and mandatory supervision after serving one-third of it, or 20 years.

This very argument was advanced by the dissenting justices in *In re Franks*, but it was rejected by the majority of the Court of Criminal Appeals. *Franks*, 71 S.W.3d at 329 (Johnson, J., dissenting). As such, it is not the law. Wallace's objection on this point is without merit.

Wallace next points to a number of exhibits which he claims show that he is eligible for release on mandatory supervision. His inmate time computation sheet, prepared by the records office in TDCJ, lists him as a "mandatory supervision prospect," but this does not create any sort of right or expectancy in release on mandatory supervision in the face of a decision from Texas' highest criminal court holding that prisoners with life sentences are not eligible for release on mandatory supervision. A page copied from a manual entitled "Parole in Texas," published by the

5

Texas Department of Criminal Justice - Parole Division, states that all offenses at the time of Wallace's offense were eligible for mandatory supervision, but this also cannot supersede the Court of Criminal Appeals' determination that mandatory supervision is impossible for prisoners with life sentences because the term cannot be mathematically computed.

Wallace attaches a purported affidavit from a person named Helen Copitka, dated June 20, 2001. In this document, Copitka states that she was a voting member of the Texas Boar of Pardons and Paroles from 1976 through 1982. The mandatory supervision release program was enacted in 1977 with the intent of providing a release program for those inmates not released on parole. She states it was her understanding that all prisoners except those sentenced to death would be eligible for mandatory supervision and that a life sentence was equivalent to 60 years for purposes of determining eligibility for mandatory supervision. The *Franks* decision was rendered on December 19, 2001, after Copitka's affidavit was executed, and represents a rejection by the highest Texas criminal court of her view of the law. *See Wheat v. Dretke*, civil action no. 3:05cv1315 (N.D.Tex., July 17, 2006) (the same Copitka affidavit, offered by the petitioner as part of a motion for relief from judgment, would not change the outcome of that case).

Wallace next attaches a sheet entitled "Parole Eligibility Requirements," highlighting the portion for the 65th through 69th Legislatures, under which he was convicted. This document states that capital murder and certain other offenses required the prisoner to serve one-third of his sentence to be eligible for parole, with a minimum of two years and a maximum of 20. All offenses are eligible for mandatory supervision. The document is undated and in any event cannot supersede the decision of the Texas Court of Criminal Appeals holding that prisoners with life sentences are not eligible for mandatory supervision because the term is mathematically impossible to compute. This contention is without merit.

Similarly, Wallace attaches a document entitled "How the bills passed by the 70th Legislature, 1987, affect you." This document states that inmates sentenced for offenses committed prior to September 1, 1987 are still under the old parole and mandatory supervision eligibility laws,

but this does not affect the fact that the Texas Court of Criminal Appeals held that a prisoner sentenced to life imprisonment under the same law applicable to Wallace was not eligible for mandatory supervision because the term of his sentence was impossible to compute.

Finally, Wallace points to the *Govan* decision, in which the petitioner Cornelius Govan complained that he was being denied equal protection because the Texas prison officials were denying him a mandatory supervision release date on his life sentence. Govan had been convicted of burglary, receiving a sentence of life imprisonment, and aggravated robbery, receiving a sentence of 99 years in prison, running consecutively to the life sentence. He asserted that TDCJ had not calculated a release date on his life sentence and the Director responded that Govan's aggravated robbery conviction rendered him ineligible for release on mandatory supervision; however, the law removing aggravated robbery from mandatory supervision eligibility did not go into effect until after Govan had committed the offense. The Northern District cited the statute providing that prisoners who committed certain offenses (including aggravated robbery) or whose judgments included an affirmative finding of a deadly weapon would not be eligible for release on parole until one-third of the sentence had been served or 20 years had elapsed, whichever is less, and stated that "even though Govan is eligible for mandatory supervision on both the burglary of a habitation and aggravated robbery charges, he would not be eligible for release until he has served at least 20 calendar years."

Wallace argues that he and Govan were convicted under the same law and both of them had life sentences, and both are eligible for release on parole or mandatory supervision when they reach the statutory threshold. However, Wallace overlooks the fact that *Govan* was decided prior to *Franks* and *Arnold* and was superseded by those cases; thus, to the extent *Govan* held that a prisoner with a life sentence was eligible for release on mandatory supervision, this holding has been overruled. Wallace's objections are without merit.

## V. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Petitioner's objections are overruled and the Report of the Magistrate Judge (docket no. 15) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled application for the writ of habeas corpus is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that the Petitioner Billy Ray Wallace is **DENIED** a certificate of appealability *sua sponte*. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED.**

**So Ordered and Signed**
**Sep 2, 2016**

_____
Ron Clark, United States District Judge